IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHNNY M. RODRIGUEZ, | Case No. 8:04CV576 |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| UNION PACIFIC CORPORATION, | |
| Defendant. | |

Before the court is Union Pacific Corporation's (Union Pacific) motion for summary judgment (Filing No. 41). Following review of the motion, briefs, and evidence, the court will grant the motion in part and deny the motion in part.

I.   BACKGROUND

Johnny M. Rodriguez (Rodriguez), an American male of Mexican origin, currently is employed as a customer service representative for Union Pacific in Omaha, Nebraska. (Complaint ¶ 3; Motion ¶ 1, 5, 16). Before becoming a customer service representative, Rodriguez worked as a train dispatcher[1] for approximately seventeen years, first for Southern Pacific Railroad, then after Southern Pacific's merger with Union Pacific, for Union Pacific; and then worked as a utility clerk.[2] (Motion and Response ¶ 1, 4, 5, 14).

While employed by Union Pacific in Omaha, Union Pacific management issued Rodriguez a letter of reprimand for improper e-mail usage. (Rodriguez Aff., Ex. 1). In February 2002, Rodriguez inappropriately altered and publicly posted the letter of reprimand. (Motion and Response ¶ 9). As a result of Rodriguez's conduct, Union Pacific

---

[1] Train dispatchers are responsible for dispatching trains, directing train movements, and tracking train locations on computer screens in a command center. (Motion and Response ¶ 3).

[2] Utility clerks are responsible primarily for driving train crews to trains from the yard office and back. (Motion and Response ¶ 15).

terminated his employment. (Motion and Response ¶ 10). Rodriguez filed a charge of national origin discrimination against Union Pacific with the Nebraska Equal Opportunity Commission (NEOC) in May 2002, and after investigation, the NEOC found no evidence of discrimination because some of Rodriguez's complaints were untimely and the "evidence . . . revealed that [Rodriguez] was terminated as a result of continued inappropriate workplace conduct." (Rodriguez Aff., Ex. 1).

Rodriguez exercised his seniority with his labor union and sought an agreement position with Union Pacific. On April 8, 2002, Rodriguez returned to working for Union Pacific as a utility clerk in Kansas City. (Motion and Response ¶ 14).

In September 2003, two white females, Candace Owens Price (Price) and Loretta Howe (Howe) were promoted to yardmaster positions.[3] (Complaint ¶ 15). The yardmaster positions were not posted; rather, Price and Howe heard about the openings through "word on the street," (Price depo. 7:3), and expressed interest in a yardmaster position to Marc Syring (Syring), Union Pacific's then-Director of Terminal Operations in Kansas City, who was responsible for hiring Kansas City yardmasters. (Motion and Response ¶ 20, 33). Syring evaluated applicants based on their (1) previous rail yard experience, in particular rail yard operations; (2) past performance; (3) attendance; and (4) interpersonal skills and judgment. (Motion and Response ¶ 25). In particular, Syring sought individuals with previous operating experience as switchmen.[4] (Motion and Response ¶ 25). Neither Price nor Howe had previous switchman experience, but Syring stated he chose not to hire current switchmen because of a manpower shortage in that position at the time. (Motion and Response ¶ 43).

---

[3]Yardmasters are responsible for general supervision of all employees in yard service at their terminal locations, and expediting movement of freight throughout the terminal by efficiently placing yard crews and train cars. (Motion and Response ¶ 21).

[4]Switchmen are responsible for operating various designs of switches and derails in order to change the route of the engine or cars within the yard or on the road. (Motion and Response ¶ 26).

Rodriguez was not aware of the yardmaster position openings at the time, and for that reason did not apply. (Motion and Response ¶ 32). Following Price's and Howe's promotions, Rodriguez expressed interest in becoming a yardmaster to Syring. (Response ¶ 16). Rodriguez then filed a complaint with the Union Pacific Equal Employment Opportunity Office (EEO) complaining the open position posting procedure was improper. (Id.). Rodriguez additionally sent a letter in November 2003 to the U.S. Equal Employment Opportunity Commission (EEOC). (Motion and Response ¶ 37). After investigation and in response, the EEO informed Syring about Rodriguez's complaints, told Rodriguez to send Syring a resume (which Rodriguez did in December 2003) (Response ¶ 16), and instructed Syring to publicly post all yardmaster position vacancies. (Response Ex. G; ¶ 35; Motion and Response ¶ 39). Before this change, only employees who previously had expressed interest in a yardmaster position were considered for openings. (Motion and Response ¶ 31).

In early January 2004, pursuant to the new posting procedure, Syring sought the names of current Union Pacific employees interested in applying for two open Kansas City yardmaster positions. (Motion and Response ¶ 22). Along with other employees, Rodriguez indicated his interest in one of the positions, and Syring told Rodriguez he would be considered. (Motion and Response ¶ 23). Believing he was not being considered, in April 2004, Rodriguez resigned his utility clerk position and returned to his family in Omaha to work as a customer service representative with Union Pacific. (Motion and Response ¶ 16).

In approximately May 2004, Syring hired Eric Raspberry (Raspberry) and David King (King), who the court infers are two non-minority males, to fill the yardmaster positions. (Motion and Response ¶ 28). Both Raspberry and King had prior switchmen experience. (Motion and Response ¶ 29). Syring decided not to interview Rodriguez for the yardmaster position based on a telephone conversation Syring had with another regarding Rodriguez's prior work performance and Syring's belief Rodriguez was less qualified for the position, given Rodriguez had no prior switchman experience. (Motion and Response ¶ 30).

In November 2004, after receiving a right to sue letter from the EEOC, Rodriguez timely filed suit against Union Pacific alleging discrimination and retaliation under Title VII and Nebraska state law. See Neb. Rev. Stat. § 48-1104. (Complaint ¶ 22, 30). Rodriguez claims Union Pacific discriminated against him on the basis of his national origin by failing to promote him to a yardmaster position both in 2003 and 2004, and retaliated against Rodriguez for raising his discrimination claims with the NEOC in 2002 and the EEOC in 2003. Union Pacific moved for summary judgment, and Rodriguez opposes the motion.

## II.     STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The court must view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. EEOC v. Liberal R-II Sch. Dist., 314 F.3d 920, 922 (8th Cir. 2002).

## III.    DISCUSSION[5]

The court analyzes Title VII and Nebraska state law claims alleging discriminatory or retaliatory treatment pursuant to the burden-shifting paradigm first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Roark v. City of Hazen, Ark., 189 F.3d 758, 761 (8th Cir. 1999); see also Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 723 (8th Cir. 2002). Under this framework, Rodriguez must first establish a prima facie case of discrimination. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The burden then shifts to Union Pacific to come forward with a legitimate, non-discriminatory reason for the action it took. Id. at 254. If Union Pacific meets its burden, the burden shifts back to Rodriguez to show Union Pacific's reason is a pretext for illegal discrimination. Roark, 189 F.3d at 761.

---

[5]Rodriguez argues Union Pacific failed to comply with Federal Rule of Civil Procedure 56(e) and United States District Court for the District of Nebraska Local Rule 7.1. The court understands these rules and has reviewed the motion, briefings, and evidence accordingly. The court denies Rodriguez's motion to strike (Filing No. 66).

**A.     Discrimination**

To establish a prima facie case of national origin discrimination based on failure to promote, Rodriguez must demonstrate (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) other employees of similar qualifications who were not members of a protected group were promoted at the time Rodriguez's request for promotion was denied.  See Marzec v. Marsh, 990 F.2d 393, 395-96 (8th Cir. 1993) (citing McDonnell Douglas, 411 U.S. at 802).

**1.     2003 Yardmaster Position Openings**

Regarding the yardmaster position openings in 2003, Union Pacific argues Rodriguez fails to demonstrate he applied for a promotion to yardmaster, thus Rodriguez cannot meet the second prong of his prima facie case.  Given the facts of this case, Union Pacific misapplies the McDonnell Douglas burden-shifting framework.  See Chambers v. Wynne Sch. Dist., 909 F.2d 1214, 1217 (8th Cir. 1990) ("The McDonnell Douglas model is not . . . always the appropriate standard for evaluating a plaintiff's prima facie showing of discrimination.").  As in Chambers, a failure to promote case, if the court "strictly applied" the McDonnell Douglas test, Rodriguez "would clearly not meet the standards for establishing a prima facie case because [he] did not formally apply for this position."  Id.  However, the court will not fully apply the McDonnell Douglas test "if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application."  Id.

Here, the 2003 yardmaster job openings were not posted or advertised.  Rodriguez had no knowledge of the openings until he learned they had been filled by Price and Owens.  In fact, it was Rodriguez's complaints to Union Pacific's EEO and the EEOC that caused Union Pacific to change its yardmaster job posting procedures in Kansas City.  For these reasons, the court excuses the second element of Rodriguez's prima facie case.  See id.  Because Rodriguez did not apply for the positions, he could not be rejected, thus the court also excuses the third element of Rodriguez's prima facie case.

The court now turns to the remaining elements of Rodriguez's prima facie case. Regarding the first element, Union Pacific does not challenge Rodriguez's membership in a protected group. Regarding the fourth element, Union Pacific promoted two white females, Price and Howe, with similar qualifications to Rodriguez. Neither Price nor Howe had switchman experience, and Price was promoted from a utility clerk position, the same position held by Rodriguez at the time. Rodriguez therefore has demonstrated his prima facie case.

Union Pacific bears the burden to come forward with a legitimate, non-discriminatory reason for why Rodriguez was treated less favorably with regard to Union Pacific's hiring practices than white applicants during the same period. See Burdine, 450 U.S. at 253. Union Pacific claims Syring promoted two white individuals with qualifications similar to Rodriguez (no switchman experience), but did not promote Rodriguez, because Union Pacific was facing a switchman manpower shortage and did not want to promote current switchmen. The court does not find this claim to be a legally legitimate reason why Price and Howe were promoted over Rodriguez. Rodriguez, like Price and Howe, was not a switchman at the time the yardmaster positions became available. Thus, Union Pacific's claim that its preference for Price and Howe can be explained by a switchman shortage lacks merit. Neither Price and Howe nor Rodriguez were switchmen; hence, on Union Pacific's stated criteria, there was no legitimate reason to prefer Price and Howe. See Burdine, 450 U.S. at 254 ("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that . . . *someone else was preferred*, for a legitimate, nondiscriminatory reason." (emphasis added)).

Because the court finds Rodriguez presents sufficient evidence demonstrating a prima facie case of national origin discrimination, and Union Pacific fails to offer a legally legitimate reason for its actions, the court need not reach the issue of pretext. The court notes Union Pacific's informal word-of-mouth hiring practice in 2003, combined with the fact the hiring practice resulted in no racial or ethnic minorities being promoted to yardmaster positions during the time Syring was doing the hiring (Response ¶ 20), "is itself strong circumstantial evidence of discrimination" and "helps to establish a reasonable

inference of [Union Pacific]'s discriminatory treatment of" minorities.  EEOC v. Metal Serv. Co., 892 F.2d 341, 350 (3d Cir. 1990), cited in Chambers, 909 F.2d at 1217.  For these reasons, the court concludes there are genuine issues of material fact whether Union Pacific illegally discriminated against Rodriguez when it failed to promote him in 2003 to one of the open yardmaster positions.

### 2.     2004 Yardmaster Position Openings

Regarding the yardmaster position openings in 2004, Union Pacific argues Rodriguez fails to demonstrate he was qualified for the positions and other employees of similar qualifications who were not members of a protected group were promoted at the time Union Pacific denied Rodriguez's request for promotion.  The court concludes Rodriguez fails to establish his prima facie case.  One important qualification for these yardmaster positions was switchman experience, notwithstanding the fact the persons promoted in 2003 lacked this experience.  Rodriguez did not have any switchman experience.  The two individuals promoted to the yardmaster positions in 2004, Raspberry and King, both had switchman experience.  Rodriguez does not dispute that persons with switchman experience, like Raspberry and King, are more qualified for yardmaster positions than Rodriguez.  Rodriguez therefore fails to raise a genuine issue of material fact whether Union Pacific discriminated against him when it failed to promote him in 2004 to one of the open yardmaster positions.

### B.     Retaliation

To establish a prima facie case of retaliation, Rodriguez must demonstrate (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the two events.  See LaCroix v. Sears Roebuck, Co., 240 F.3d 688, 691 (8th Cir. 2001).  With regard to the third element, the only one at issue, Rodriguez presents no evidence of a causal link other than the temporal proximity between Syring learning about Rodriguez's complaints and Syring's decision not to promote Rodriguez.

Rodriguez claims Syring learned of Rodriguez's complaints when Syring had a

conversation with someone about Rodriguez's prior work performance while reviewing Rodriguez's application for the 2004 yardmaster position openings, thus any lack of proximity between the actual complaints and the adverse employment actions is irrelevant. The court disagrees. First, Rodriguez's argument fails on the facts because there is no evidence in the record Syring discussed Rodriguez's prior complaints at that time. The court must therefore compare the dates of the complaints with the dates when Rodriguez was not promoted. Doing so convinces the court Rodriguez's retaliation argument fails as a matter of law.

Union Pacific's failure to promote Rodriguez in September 2003 occurred seventeen months after he filed his complaint with the NEOC in May 2002. Union Pacific's failure to promote Rodriguez in 2004 occurred seven months after he filed his complaint with the EEOC, and twenty-four months after he filed his complaint with the NEOC. These lengthy intervals between the complaints and adverse employment actions "so dilute[] any inference of causation that [the court is] constrained to hold as a matter of law that the temporal connection[s can]not justify a finding in [Rodriguez]'s favor on the matter of causal link." See Kipp v. Mo. Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (holding two-month interval too long to justify causal link); see also Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 685 (8th Cir. 2001) (holding "seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally–and therefore causally–related"); Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999) ("Standing alone, a four-month gap weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." (internal quotation omitted)); Nelson v. J.C. Penney Co., 75 F.3d 343, 346-47 (8th Cir. 1996) (holding one-month interval between charge of discrimination and termination, without more, insufficient to establish casual link). The record does not present any other basis for establishing a causal connection between the protected activity (complaint filings) and any adverse employment action.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED**:

(1) Union Pacific's motion for summary judgment (Filing No. 41) is

    (a) **GRANTED** as to Rodriguez's retaliation claim;

    (b) **GRANTED** as to Rodriguez's discrimination claim with respect to Union Pacific's failure to promote Rodriguez in May 2004; and

    (c) **DENIED** as to Rodriguez's discrimination claim with respect to Union Pacific's failure to promote Rodriguez in September 2003.

(2) Rodriguez's motion to strike (Filing No. 66) is **DENIED**.

(3) This case shall proceed to trial, pursuant to the scheduling order, on Rodriguez's national origin discrimination claim with respect to Union Pacific's failure to promote Rodriguez in September 2003.

Dated this 16th day of May, 2006.

                                                    s/ William Jay Riley
                                                    United States Circuit Judge
                                                    Sitting by Designation